## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEGAN ENGLISH, | : | |
| *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 19-5277 |
| | : | |
| TURN 5, INC., | : | |
| *Defendant*. | : | |

### MEMORANDUM

**JONES, II  J.**                                                                   **October 16, 2020**

## I.    INTRODUCTION

The present matter comes before the Court upon claims of employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* (2012), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*  In this civil rights action, Plaintiff Megan English ("Plaintiff") has sued her former employer, Turn 5, Inc. ("Defendant"), for several different—but related—adverse employment actions, including a demotion, a failure to promote, materially adverse retaliation, and a constructive discharge. Upon amendment of Plaintiff's Complaint (First Amended Complaint ("FAC"), ECF No. 8), Defendant filed the instant Partial Motion to Dismiss (ECF No. 9) [hereinafter Motion to Dismiss] under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Therein, Defendant seeks dismissal of Plaintiff's retaliation and constructive discharge claims under Title VII (Count I) and the PHRA (Count III), together with Plaintiff's claims of discriminatory non-promotion and pregnancy-based demotion under the PHRA (Count III). Upon consideration of the pleadings, the relevant legal authorities, and the record as a whole, the Court grants in part and denies in part Defendant's Motion to Dismiss.

## II.   FACTUAL BACKGROUND[1]

The underlying dispute in this case arises from Plaintiff's employment relationship with Defendant, which started in October 2015 when Defendant hired Plaintiff as its Director of Human Resources.[2] (FAC ¶¶ 17-19). As the head of Defendant's Human Resources ("HR") department, Plaintiff reported to Steven Voudouris ("Voudouris"), Defendant's President and Chief Executive Officer.[3] (FAC ¶ 21).

On June 16, 2017—almost two years into her employment with Defendant—Plaintiff notified Voudouris that she was pregnant. (FAC ¶ 23). During this meeting, Plaintiff also informed Voudouris of her plan to take maternity leave pursuant to the FMLA and then return to work for Defendant upon completion of her leave.[4] (FAC ¶ 23). On August 11, 2017, Voudouris notified Plaintiff of Defendant's decision to hire a "seasoned, executive HR leader" to fill the position of Vice President of HR—a newly-created role for which Plaintiff would not be considered.[5] (FAC ¶¶ 24, 29). In response to this information, Plaintiff told Voudouris she thought hiring a Vice President of HR was unnecessary, and that she wanted to continue leading the department. (FAC ¶ 26). Notwithstanding Plaintiff's remarks, Voudouris proceeded to disclose that Plaintiff would no longer lead Defendant's HR department;[6] however, he did not reveal Defendant's intention to

---

[1] These facts are taken from the First Amended Complaint and accepted as true, with all reasonable inferences drawn in Plaintiff's favor. *See Kost v. Kazakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *see also Mammen v. Thomas Jefferson Univ.*, Civ. A. No. 20-127, 2020 WL 2730929, at *1 (E.D. Pa. May 26, 2020).

[2] In the First Amended Complaint, Plaintiff asserts that at all times during her employment with Defendant, she "performed her job duties in a highly competent manner." (FAC ¶ 20).

[3] As Defendant's President and CEO, Voudouris evaluated Plaintiff's job performance. On March 2, 2017, Voudouris gave Plaintiff a positive annual review and bonus. (FAC ¶ 22).

[4] Plaintiff alleges that after she told Voudouris of her pregnancy and plan to utilize FMLA leave, Voudouris began to: (1) unjustly criticize her performance; (2) ignore her; (3) bring up baseless concerns about the HR department; (4) exclude her from decisions concerning the department; and (5) treat her in a hostile and dismissive manner. (*See* FAC ¶¶ 28, 29).

[5] "Before this conversation, and before Plaintiff had informed Voudouris of her pregnancy and intention to utilize FMLA leave, Voudouris had never mentioned or indicated to Plaintiff a desire or need to create and hire for a Vice President of [HR] position[.]" (FAC ¶ 25).

[6] According to Plaintiff, Defendant failed "to provide Plaintiff any explanation for why she could not continue in her position of Director of [HR] and why she was not considered for the Vice President of [HR] role." (FAC ¶ 41).

demote Plaintiff or to eliminate her position. (FAC ¶¶ 26, 27). Instead, on September 27, 2017, Voudouris emailed Plaintiff and asked her to review a job description for the Vice President position. (FAC ¶ 32). Upon review, Plaintiff determined she was qualified for the role. (FAC ¶ 32). However, the day after she modified the description, Voudouris instructed her to post the opening without revisions. (FAC ¶ 33).

Plaintiff began her maternity leave pursuant to the FMLA on December 16, 2017. (FAC ¶ 34). Not long after the birth of her son,[7] Voudouris informed Plaintiff of Defendant's decision to eliminate her position as Director of the HR department.[8] (FAC ¶ 37). Plaintiff was then given two options: either (1) "accept a demotion to a Lead Recruiter position"; or (2) "accept severance pay in exchange for signing a release of all claims against Defendant." (FAC ¶ 38). As she did not want to jeopardize her employment with Defendant, Plaintiff emailed Voudouris on March 2, 2018, accepting the Lead Recruiter position, requesting to be considered for the Vice President role, and complaining that Defendant had created the new position only after she notified Voudouris of her pregnancy. (FAC ¶¶ 42, 43). In the same email—to which Defendant never responded—Plaintiff also noted that she was fully qualified to continue as the head of Defendant's HR department. (FAC ¶¶ 42, 43, 44).

On March 13, 2018, while still on maternity leave, Plaintiff filed a dual Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").[9] (FAC ¶¶ 14, 45). Plaintiff's maternity leave

---

[7] Plaintiff gave birth to her son on December 28, 2017. (FAC ¶ 35).

[8] Voudouris informed Plaintiff of this news during a phone call on February 16, 2018, and again on February 19, 2018, via a letter. (*See* FAC ¶ 37) ("Prior thereto, Plaintiff had no indication that her job was in jeopardy of elimination."). The decision to eliminate Plaintiff's position had been made in anticipation of Defendant's hire for the new HR position. (FAC ¶ 39).

[9] In the PHRC Charge of Discrimination, Plaintiff claims that she was subjected to unlawful discrimination by Defendant because of her "sex (female) and pregnancy." (*See* FAC, Ex. 1) (copy of Plaintiff's PHRC Charge of Discrimination). It was not until August 13, 2019 that Plaintiff received a right to sue letter from the EEOC. (*See* FAC ¶ 15; *see also* FAC, Ex. 2 (copy of EEOC Notice of Right to Sue for Charge of Discrimination)).

was scheduled to end on March 22, 2018, after which she would return to work for Defendant as a Senior Recruiter. (FAC ¶ 47). However, when Plaintiff assumed her new position, Defendant subjected her to continued antagonistic behavior and eventually terminated her employment on June 28, 2018. (FAC ¶¶ 48, 50).

## III.   PROCEDURAL HISTORY

Plaintiff commenced this action by filing an initial Complaint against Defendant on November 8, 2019. (*See* Complaint, ECF No. 1). In the Complaint, Plaintiff asserted claims for unlawful discrimination and retaliation under Title VII, the FMLA, and the PHRA. (Compl. ¶¶ 49-56). Subsequently, on January 14, 2020, Defendant filed a Partial Motion to Dismiss the initial Complaint for its failure to state a claim. (*See* Defendant's First Partial Motion to Dismiss, ECF No. 5). Plaintiff then submitted an Amended Complaint on March 13, 2020, alleging the same acts of unlawful discrimination and retaliation by Defendant as in the original Complaint. (*See* FAC, ECF No. 8). Subsequently, on March 24, 2020, Defendant filed the instant Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 9). Therein, Defendant moves to dismiss the First Amended Complaint on the following grounds: (1) Plaintiff's retaliation and constructive discharge claims in Count I (Title VII) and Count III (PHRA) should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative Fed. R. Civ. P. 12(b)(6), because Plaintiff failed to exhaust her administrative remedies before initiating this action; and (2) Plaintiff's discriminatory non-promotion and wrongful demotion claims in Count III (PHRA) should be dismissed with prejudice because Plaintiff failed to file the PHRC Charge of Discrimination within the 180-day time limit period required by the PHRA.[10]

---

[10] Defendant asserts that Plaintiff filed her PHRC Charge of Discrimination more than 180 days after she was notified that she would not be hired for the Vice President position and would no longer lead Defendant's HR department. (Mot. Dismiss 1-2).

Plaintiff filed a Response in Opposition to Defendant's Partial Motion to Dismiss (ECF No. 10) on April 7. 2020. Then, on April 23, 2020, Defendant responded with a Reply Brief in Further Support of its Partial Motion to Dismiss (ECF No. 13). Accordingly, the matter is now fully briefed and ripe for disposition.

## IV.   STANDARDS OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(1)

"Although it is a basic tenet of administrative law that a plaintiff should timely exhaust all administrative remedies before seeking judicial relief, the purpose of this rule is practical, rather than a matter of affecting substantive justice . . . [f]ailure to exhaust is in the nature of statutes of limitation and does not affect the District Court's subject matter jurisdiction." *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999) (internal quotation marks omitted). Accordingly, it is more appropriate to assess Defendant's exhaustion and timeliness arguments in favor of dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Anjelino*, 200 F.3d at 87 ("[T]he District Court should have considered the exhaustion and timeliness defenses presented in this case under Rule 12(b)(6), rather than under Rule 12(b)(1).").

### B.   Federal Rule of Civil Procedure 12(b)(6)

When reviewing a Rule 12(b)(6) motion to dismiss, district courts must first separate legal conclusions from factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Legal conclusions should be discarded, and well-pleaded facts given the deference of truth. *Id*. at 210-11. Courts must then determine whether the well-pleaded facts state a "plausible claim for relief." *Id*. at 211. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

To satisfy facial plausibility, a claim's factual content must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 325 (3d Cir. 2019) (citation omitted); *Thompson v. Real East Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).[11] This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Although the court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff . . . [it is] not compelled to accept unsupported conclusions and unwarranted inferences . . . or a legal conclusion couched as a factual allegation." *Estate of Roman v. City of Newark*, 914 F.3d 789, 795-96 (3d Cir. 2019) (citations omitted).[12]

## V.    DISCUSSION

### A.    Retaliation and Constructive Discharge Claims in Count I (Title VII) and Count III (PHRA) of Plaintiff's First Amended Complaint

In the instant Motion, Defendant first moves to dismiss Plaintiff's retaliation and constructive discharge claims in Counts I (Title VII) and III (PHRA) of the First Amended Complaint, arguing that Plaintiff failed to raise—and thus failed to exhaust—the claims before the PHRC. (Mot. Dismiss 1). Accordingly, the Court must determine whether the initial PHRC Charge of Discrimination encompasses Plaintiff's claim for retaliation.

It is undisputed that a plaintiff is required to "exhaust all required administrative remedies before bringing a claim for judicial relief." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013). Prior to bringing a claim under either Title VII or the PHRA, a plaintiff is required

---

[11] A plaintiff states a plausible claim only when the "[f]actual allegations . . . raise a right to relief above the speculative level." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[12] Determining "whether a complaint states a plausible claim for relief is context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 679.

to file a charge of discrimination with the EEOC and receive a notice of the right to sue. *Robinson v. Dalton*, 107 F.3d 1018, 1020-21 (3d Cir. 1997); *Mahan v. City of Phila.*, 296 F. Supp. 3d 712, 717 (E.D. Pa. 2017). "A claim has been administratively exhausted when the specifics of a charge with the administrative agency 'fairly encompass a claim' and would put the agency and the defendant employer 'on notice' of that claim." *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 600-01 (E.D. Pa. 2015).

Thereafter, if a plaintiff initiates a lawsuit, "[t]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." *Mandel*, 706 F.3d at 163 (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)). In *Mandel*, the Third Circuit held that if a district court wants to exercise jurisdiction over any new act that arose while the administrative proceedings were pending before the EEOC, the district court must determine "whether the acts alleged in the subsequent . . . suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *See Robinson v. Consol Pennsylvania Coal Co. LLC*, 425 F. Supp. 3d 433, 442 (W.D. Pa. 2019) (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)); *see also Duckworth v. Biello*, No. 13-7143, 2014 WL 1389273, at *3 (E.D. Pa. Apr. 9, 2014) (quoting *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) ("[w]hen faced with a Complaint containing claims that were not presented to the EEOC, 'a district court may assume jurisdiction over additional charges if they are reasonably within the scope of the [] original charges and if a reasonable investigation by the EEOC would have encompassed the new claims.'")).[13]

---

[13] Determining whether a plaintiff's new claims have exhausted all administrative remedies "is a fact specific inquiry that requires the Court to 'examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-

Generally, courts give the EEOC charge a "fairly liberal construction" and concentrate on the facts asserted therein. *See Mahan*, 296 F. Supp. at 718 (quoting *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 644 (E.D. Pa. 2011)); *see also Weems v. Kehe Food Distribs., Inc.*, 804 F. Supp. 2d 339, 342 (E.D. Pa. 2011) (quoting *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978) ("[t]he scope of the original charge should be liberally construed because charges are most often drafted by one who is not well versed in the art of legal description.")). Thus, courts ultimately determine whether the plaintiff put the EEOC "on notice" of their attempt to raise such a claim. *See Green v. Postmaster Gen.*, 437 Fed. App'x 174, 178 (3d Cir. 2011); *see also Frazier v. Exide Techs.*, No. 11-1863, 2012 WL 440398, at *2 (E.D. Pa. Feb. 13, 2012) (finding a retaliation claim within the scope of an EEOC charge alleging race discrimination because it was "reasonable to conclude that the EEOC would have investigated whether [the plaintiff's] informal complaints were followed by retaliation from his supervisors."). *But see Ford-Greene*, 106 F. Supp. 3d at 600-01 (holding that a PHRC complaint asserting racial discrimination and retaliation did not "fairly encompass" a hostile work environment claim because it did not include facts alleging the elements of such a claim; therefore, the defendant was not "on notice" of that claim).

Turning to the present case, the Court finds that Plaintiff's retaliation claim is reasonably within the scope of the initial PHRC Charge of Discrimination ("PHRC Complaint").[14] In the Charge of Discrimination, Plaintiff states that "she was subjected to unlawful discrimination [by Defendant] because of [her] sex (female) and pregnancy."[15] (*See* PHRC Compl. ¶ 22). In particular, Plaintiff alleges Defendant retaliated against her after she notified Voudouris of her

---

by-case basis before determining that a second complaint need not have been filed.'" *Duckworth v. Biello*, No. 13-7143, 2014 WL 1389273, at *4 (E.D. Pa. Apr. 9, 2014) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997)).

[14] A copy of Plaintiff's PHRC Charge of Discrimination ("PHRC Complaint") is attached to the FAC as Exhibit 1.

[15] "Although the court is generally limited to its review of the facts contained in the complaint, it may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *McBride v. Warden of Allegheny Cnty. Jail*, 577 Fed. App'x 98, 99 (3d Cir. 2014).

pregnancy on June 16, 2017. (FAC ¶ 43). Plaintiff also suggests Defendant retaliated against her after she emailed Voudouris on March 2, 2018, complaining of Defendant's discriminatory conduct towards her in connection to her pregnancy. (FAC ¶ 42). Furthermore, Plaintiff states that upon completion of her FMLA maternity leave on March 22, 2018, she returned to work for Defendant, assumed the role of Senior Recruiter—a demotion from her previous position as Director of HR—and was subjected to Defendant's continued antagonism until she was ultimately fired on June 28, 2018. (FAC ¶¶ 47-50).

Although Plaintiff failed to specifically state a claim for retaliation in the initial PHRC Charge of Discrimination, the PHRC Complaint provides the following: when Plaintiff emailed Voudouris on March 2, 2018, she proclaimed that the new Vice President position had been created after—and because—she informed Defendant of her pregnancy. (PHRC Compl. ¶ 18). The Charge of Discrimination also reveals that Plaintiff received no response from Defendant as to her internal complaint. (PHRC Compl. ¶ 19). Consistent with *Frazier*, the inclusion of Plaintiff's unanswered informal complaint—a protected activity—not only put Defendant on notice of a possible retaliation claim,[16] but it would also lead a proper EEOC investigation to reveal that a claim of retaliation is within the scope of Plaintiff's PHRC Charge of Discrimination.[17] Accordingly, the Court finds that Plaintiff included sufficient factual support in her initial PHRC Charge of Discrimination to now sustain a claim for retaliation in this District Court.

---

[16] When pleading a *prima facie* case of retaliation under Title VII, a plaintiff "must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Civil Rights Act of 1964, § 704(a), U.S.C.A. § 2000e-3(a); *Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 95 (3d Cir. 2016).

[17] A proper EEOC investigation would reveal that a claim of retaliation is within the scope of Plaintiff's Charge of Discrimination because Plaintiff's retaliation claim is predicated upon the same facts as those included in the PHRC Complaint. *Frazier*, 2012 WL 440398, at *2.

Additionally, the Court finds that because Plaintiff did not receive a Notice of Right to Sue from the EEOC until August 13, 2019, the alleged retaliatory acts occurred while Plaintiff's Charge of Discrimination was pending before the EEOC. (FAC ¶ 15). Consistent with *Mandel*, those claims could have reasonably emerged from Plaintiff's PHRC Charge of Discrimination, making them fairly within the scope of the prior charge.  *Mandel*, 706 F.3d at 163.  The Court finds that Plaintiff administratively exhausted her claim for retaliation before the PHRC. Accordingly, Plaintiff's retaliation claim under the PHRA survives Defendant's Motion and shall not be dismissed.

Next, Defendant moves to dismiss Plaintiff's constructive discharge claim on the grounds that Plaintiff failed to exhaust said claim before the PHRC. The Court finds that the facts alleged in Plaintiff's PHRC Charge of Discrimination do not "fairly encompass" a constructive discharge claim; therefore, such a claim is not reasonably within the scope of the prior charge.[18] *Ford-Greene*, 106 F. Supp. at 600-01; *Robinson*, 425 F. Supp. at 442. Plaintiff's PHRC Complaint expressly provides that Plaintiff is "currently" employed by Defendant and will be returning to work following the completion of her maternity leave. (PHRC Compl. ¶¶ 3, 18, 20). However, the Charge of Discrimination only states that Plaintiff was given the option to either accept severance pay or assume the role of Lead Recruiter; and that Plaintiff accepted the position. (PHRC Compl. ¶¶ 16, 18, 20). As such, Plaintiff did not include any facts alleging that the discrimination had reached "the point where a reasonable person in [her] position would have felt compelled to resign." *Green*, 136 S. Ct. at 1777.

---

[18] A claim of constructive discharge has two basic elements. First, "[a] plaintiff must prove [] that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004)). Second, the plaintiff must show that he actually resigned. *Id.*

Moreover, Plaintiff did not include any facts suggesting that she "actually resigned." *Id.* On the contrary, Plaintiff was terminated from her position as Lead Recruiter on June 28, 2018. (FAC ¶ 50). Thus, Plaintiff was still employed by Defendant when she filed the Charge of Discrimination on March 13, 2018. Consequently, a reasonable EEOC investigation would not have encompassed Plaintiff's constructive discharge claim. *Duckworth*, 2014 WL 1389273, at *3 (quoting *Howze*, 750 F.2d at 1212). Consistent with *Ford-Greene*—where a PHRC complaint alleging retaliation and race discrimination did not include facts to support a new hostile work environment claim—Plaintiff's PHRC Complaint does not include any facts to support this new constructive discharge claim. *Ford-Greene*, 106 F. Supp. at 600-01. As such, Plaintiff's Charge of Discrimination fails to put either the EEOC or Defendant "on notice" that Plaintiff is attempting to raise such a claim. *Id.*; *Green*, 437 Fed. App'x at 178. The Court finds that Plaintiff did not administratively exhaust her constructive discharge claim before the PHRC. Accordingly, Plaintiff's constructive discharge claim fails to survive Defendant's Motion and shall be dismissed.

## B.  Discriminatory Non-Promotion and Wrongful Demotion Claims in Count III (PHRA) of Plaintiff's First Amended Complaint

In the instant Motion, Defendant additionally moves to dismiss Plaintiff's claim that Defendant failed to promote her to Vice President of HR and instead demoted her as head of the HR department due to her gender and pregnancy. Claims brought under the PHRA are analyzed under the same framework as those under Title VII. *White v. Gallagher Bassett Servs.*, No. 02-2364, 2003 WL 302407, at *4 (E.D. Pa. Feb. 4, 2003). As noted, a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief. *Mahan*, 296 F. Supp. 3d at 717 (quoting *Mandel*, 706 F.3d at 164). To proceed under the PHRA, a plaintiff must file an administrative complaint with the PHRC "within 180 days of the alleged acts of discrimination." *Id.*; 43 Pa. Cons. Stat. § 959(h). *See Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471

(3d Cir. 2001); *Vazquez v. Carr & Duff, Inc.*, No. 16-1727, 2017 WL 4310253, at \*6 (E.D. Pa. Sept. 28, 2017) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (explaining that "Pennsylvania courts strictly interpret the PHRA filing requirement and 'have repeatedly held that persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies' authorized by the Act.")). As such, if a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from pursuing judicial remedies.

Courts routinely apply the 180-day limitations period to claims brought under the PHRA. However, the Supreme Court has determined that the PHRA filing requirement is not applicable in all situations—an exception known as the continuing violations doctrine. *Ryan v. Gen. Mach. Prod.*, 277 F. Supp. 2d 585, 592 (E.D. Pa. 2003). In *Ryan*, the Supreme Court held that when "a plaintiff has difficulty identifying precisely when the illegal conduct occurred or a violation is continuous, the filing requirement . . . 'is subject to waiver, estoppel, and equitable tolling.'" *Id.* (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). The continuing violation doctrine is thus "an equitable exception that allows a plaintiff to pursue a claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *Ryan*, 277 F. Supp. at 592. The Supreme Court categorized "termination, failure to promote, denial of transfer, or refusal to hire" as easily identifiable, discrete retaliatory or discriminatory acts that constitute "a separate actionable unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (internal quotation marks omitted) (providing a list of discrete acts for which the limitations period runs from the act).

A discrete discriminatory or retaliatory act "*occurred* on the day that it *happened*," and each discrete act starts a new clock for filing charges alleging that act. *Id*. at 110, 113 (emphasis added). Thus, a complaint must be filed within 180 days of the discrete act or the complaint becomes time-barred and nonactionable. *Id.* Furthermore, the Supreme Court determined that "certain discrete acts of discrimination [are] not susceptible of analysis under a continuing violation theory." *See Williams v. Rohm & Haas Co.*, 90 F. App'x 627, 628 (3d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114); *see also Noel v. The Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010) (holding that the time limitation applies to discrete employment actions, such as promotion decisions); *Ryan*, 277 F. Supp. at 592 (noting that the Supreme Court and the Third Circuit both "held that promotions are isolated, discrete incidents as to which continuing violation rarely, if ever, applies.").[19] "Discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.

In the present case, Plaintiff's claims for discriminatory non-promotion and a pregnancy-based demotion are categorized as discrete discriminatory acts—each with a clock that begins to run on the day the act occurred. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114. As upheld in *Williams* and *Ryan*, these discrete acts of discrimination are not susceptible to the continuing violation theory and shall be strictly analyzed under the 180-day limitations period. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 114; *Williams*, 90 F. App'x at 628; *Ryan*, 277 F. Supp. at 592. As such, because Plaintiff filed the PHRC Charge of Discrimination on March 13, 2018, any alleged discriminatory act that occurred before September 14, 2017 is time-barred under the PHRA. (FAC ¶ 45).

---

[19] Where there exists a discrete act of discrimination, specifically including a failure to promote, the "continuing violation theory" does not extend the deadline for filing the claim. *See generally Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013); *O'Connor v. City of Newark*, 440 F.3d 125 (3d Cir. 2006).

Plaintiff's claim that Defendant demoted her from her prior role as Director of HR, due to her gender and/or pregnancy, is time-barred under the PHRA because it was not filed within 180 days of the discreet act. Plaintiff was hired by Defendant to head the HR Department under the title of Director of HR. (FAC ¶ 19). Subsequently, Plaintiff informed Defendant of her pregnancy on June 16, 2017. (FAC ¶ 23). Plaintiff alleges that during a conversation on August 11, 2017, Voudouris informed her of Defendant's intentions to hire a Vice President of HR. (FAC ¶ 24). Although Plaintiff states that at no point during the conversation on August 11, 2017 did Voudouris indicate his intention to demote or eliminate her position, Plaintiff clearly notes that during that conversation, Voudouris announced that Plaintiff would no longer continue to lead the HR Department. (FAC ¶¶ 24, 26). Accordingly, as this discrete act occurred on August 11, 2017—34 days before September 14, 2017—the Court finds that Plaintiff's claim that she was demoted as the head of Defendant's HR department is time-barred under the PHRA and shall be dismissed.

By contrast, Plaintiff's claim of discriminatory non-promotion (in relation to the Vice President position) is not time-barred under the PHRA because it was filed within 180 days of the alleged discrete act.[20] While Plaintiff's First Amended Complaint states that on August 11, 2017, Voudouris made it clear that Plaintiff would not be considered for the Vice President position, it was not until Plaintiff's March 2, 2018 email to Voudouris that Plaintiff even requested to be considered for the position. (FAC ¶¶ 24, 42). Additionally, Plaintiff did not determine whether she was qualified for the Vice President position until she reviewed the job description on September 27, 2017. (FAC ¶ 32). However, Plaintiff did not request to be considered for the position until

---

[20] To assert a claim of discriminatory non-promotion under the PHRA, a plaintiff must show that: (1) "she belongs to a protected class; (2) she applied to and was qualified for an available position; (3) despite her qualifications, she was rejected; and (4) after she was rejected the position remained open and the [Defendant] continued to seek applications from persons with her qualifications." *Peace-Wickham v. Walls*, 409 Fed. App'x 512, 524 (3d Cir. 2010) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

March 2, 2018—which is well after September 14, 2017. (FAC ¶ 42). As a result, Plaintiff's failure-to-promote claim is not time-barred under the PHRA because it was brought within 180 days of the alleged discrete act. In the Court's view, these allegations are sufficient to allow the claim to survive Defendant's Motion.

## VI.    CONCLUSION

For the reasons set forth herein, Defendant's Partial Motion to Dismiss (ECF No. 9) shall be granted in part and denied in part. In particular, Defendant's Motion shall be granted as to Plaintiff's constructive discharge claim in Counts I (Title VII) and III (PHRA) of the First Amended Complaint, as well as to Plaintiff's demotion claim in Count III (PHRA). Defendant's Motion shall be denied as to Plaintiff's retaliation claim in Counts I (Title VII) and III (PHRA) of the First Amended Complaint, as well as to Plaintiff's failure-to-promote claim in Count III (PHRA).

An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II      J.